## TOWN OF ARLINGTON & others *vs.* STATE TAX COMMISSION & others.

Suffolk. April 4, 1974. — August 14, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, & KAPLAN, JJ.

*Regional School District. Municipal Corporations,* Municipal Finance.

Under G. L. c. 71, § 16D, directing the State Treasurer to pay to each town in a regional school district an amount in addition to, and calculated under, the school aid due under c. 70, "provided, however, that no such additional amount shall be paid to any such town prior to the date of award of a contract for the construction of a regional school by the regional district school committee," and where a contract for such construction was awarded in a district in October, 1972, and the Department of Education in December, 1972, forwarded warrants to the State Treasurer authorizing payment of c. 71, § 16D, assistance for the calendar year 1972, it was held that towns in the district were entitled to the additional amount for that year, and that payment thereof should not have been postponed until after school aid under c. 70 for 1972, based on expenses of that year, was paid. [171-175]

Under the provision of G. L. c. 71, § 16D, that the State Treasurer shall pay annually to each town in a regional school district an amount equal to fifteen per cent of the amount of school aid determined to be due such town under c. 70 "and" c. 58, § 18A (b), the proportional reduction in aid stated in c. 58, § 18A (b) (5), in the event of insufficient money in the fund provided for in § 18A must be performed before calculating the amount to be paid under § 16D. [174-176]

BILL IN EQUITY filed in the Superior Court on September 17, 1973.

The suit was reported without decision by *Good,* J.

*Acheson H. Callaghan, Jr.* (*Robert L. Klivans* with him) for the town of Arlington & others.

*C. Peter R. Gossels,* Town Counsel, for the town of Wayland.

*Lawrence T. Bench,* Assistant Attorney General, for the State Tax Commission & others.

REARDON, J. The plaintiffs, five towns, members of the Minuteman Regional Vocational Technical School District, established pursuant to G. L. c. 71, § 15, brought a petition for declaratory relief in the Superior Court. They sought a declaration that under G. L. c. 71, § 16D,[1] as appearing in St. 1967, c. 779, each plaintiff town was entitled to payment by the State for additional school aid for the years 1972 and 1973-1974.[2] A statement of agreed facts was submitted by the parties. The trial judge reported the case to the Appeals Court and it was transferred to this court for direct appellate review. G. L. c. 211A, § 10 (A).

The plaintiff towns, together with seven other towns, organized the Minuteman Regional Vocational Technical School District pursuant to G. L. c. 71, § 15, in 1970 and 1971, the last town approving the district on April 5, 1971. Funds were appropriated for the regional district school committee by the towns for the year 1971. In that year and in 1972 that committee and the member towns approved bond issues for land acquisition and construction, and contracted with an architect to design and supervise

---

[1] "Section 16D. A regional school district shall be entitled to receive state aid for construction of regional schools. Each town in a regional school district shall continue to receive such state aid for educational purposes as it would be entitled to receive if such district had not been formed; and, in addition to such state aid, the state treasurer shall pay annually to each town in a regional school district an amount equal to fifteen per cent of the amount of school aid determined to be due such town under the provisions of chapter seventy and subsection (b) of section eighteen A of chapter fifty-eight; provided, however, that no such additional amount shall be paid to any such town prior to the date of award of a contract for the construction of a regional school by the regional district school committee."

[2] The relevant years for distribution of school aid to towns are the fiscal years of the towns. Pursuant to St. 1969, c. 849, § 77, as amended by St. 1971, c. 766, § 26, all towns are converting from a calendar fiscal year to a July 1 to June 30 fiscal year. To accomplish this a transitional 18 month fiscal year has been instituted running from January 1, 1973, to June 30, 1974. The years involved in this case are the calendar year 1972 and the transitional fiscal year 1973-1974.

construction of the regional school. On October 26, 1972, a contract for the construction of the school was awarded.

In December, 1972, the Department of Education forwarded warrants to the State Treasurer authorizing additional payment of school aid to towns which were members of regional school districts for 1972 pursuant to § 16D, but none of the plaintiff towns received such aid. In May, 1973, the State Tax Commission, pursuant to G. L. c. 58, § 25, mailed to the plaintiff towns estimates of local aid due from the Commonwealth for the year 1973-1974. According to those estimates none of the plaintiff towns will receive aid under § 16D.

There is agreement that as members of a regional school district the plaintiff towns are entitled to additional school aid by the terms of § 16D. The dispute is over the time that the towns became entitled to such extra payments. The towns' position is that they were entitled to payments in both 1972 and 1973-1974, since a contract for construction was awarded prior to the 1972 payment of § 16D funds. The defendants claim that there is no right to aid until the payment of 1974.

The language of § 16D is unambiguous and mandatory. In each year in which a town is in a regional school district the State is to pay the school aid normally due under c. 70. Section 16D requires in addition fifteen per cent. The only limitation is that "no such additional amount shall be paid to any such town prior to the date of award of a contract for the construction of a regional school." On December 4, 1972, when the Department of Education forwarded warrants to the State Treasurer authorizing payment of § 16D assistance for the calendar year 1972, and in May, 1973, when the State Tax Commission mailed estimates of State aid due to towns for the transitional fiscal year 1973-1974, each of the plaintiff towns was in a regional school district and a contract had been awarded for construction of the Minuteman regional school. The statute was plainly satisfied, and by its clear terms they were entitled to assistance from the Commonwealth in each of these years. As was said in *Westgate* v. *Century Indem. Co.* 309 Mass. 412, 416

(1941), "This is a case where there is no room for judicial interpretation of anything but plain, homely words of the English language used by the Legislature, which must be presumed to have intended what they so plainly said." See *Commonwealth* v. *Thomas,* 359 Mass. 386, 387 (1971), and cases cited.

As all the parties have recognized, § 16D was enacted to encourage the development of regional school coöperation by providing a financial incentive. The proviso delaying actual payment until after the award of a construction contract prevents misuse of this incentive by the formal creation of a regional district without good faith efforts actually to build and operate a school. The record in this case makes clear that the plaintiff towns and other towns in the Minuteman district created the district in accordance with law and proceeded without any unnecessary delay to construction. This activity was precisely that for which the statute was intended to provide an incentive and the towns are entitled to the statutory benefits.

The defendants argue that § 16D should be interpreted so as to require the postponement of aid until the year in which that c. 70 aid is paid, which is based on expenses of the fiscal year in which the contract for construction was awarded. In this case, since the contract was awarded in the State fiscal year 1972-1973, and since c. 70 aid based on school expenditures for 1972-1973 was not to be paid until 1974, the § 16D funds, it is claimed, should not be paid until after July 1, 1974. The procedure, it is said, is designed to meld easily the schedule for payment of State aid under c. 70 with the required timetable for securing appropriations for assistance under § 16D. The defendants argue that for this assistance to be included in the general appropriations bill for a given year the Department of Education must recommend the proper amount in December of the previous year. As has been noted, calculating this amount requires knowledge of the amount of c. 70 aid, and this latter figure is derived from the school expenses of an entire fiscal year. Thus it might be convenient to know for certain before December of a given year whether a town

would be entitled to payment under § 16D. If the defendants' position were adopted, the Department of Education could conclude with certainty and precision at the end of each fiscal year both the amount of c. 70 aid to be distributed the following year and the size of the appropriation which should be requested to fulfil the additional requirements of § 16D.[3] However, the Legislature has determined that the contract must only be awarded prior to actual payment. It was within the province of the General Court to conclude that the incentive value of § 16D would have been dissipated if, for reasons of scheduling convenience, a delay of payment for as much as two and one-half years after the award of a contract were permitted.

We do not believe the statute creates insuperable obstacles to the relatively simple administration of the regional school aid program. If, as appears from the record, § 16D aid is distributed annually in December, it would not be a particularly difficult task for the Department of Education in preparing its budget request, approximately one year earlier, to decide whether § 16D aid will be due in a given case. It is only necessary to forecast whether a construction contract will be awarded in the period before distribution. The low number of such schools planned for each year, the lead time for planning construction likely to be required by regional district school committees, and the coöperation which may be expected to be forthcoming from regional district school committees make it improbable that this prediction would be inaccurate in many cases. Even if such mistakes do occur occasionally no irreparable harm would result. If it turns out that no contract has been awarded at the time of payment, the earmarked funds could be withheld. If a contract is awarded prior to payment contrary to expectations, a supplemental appropriation may be sought. Indeed such an extra appropriation was necessary to satisfy the statute in the State fiscal year

---

[3] It should be noted that there would be absolutely no loss in convenience and certainty so long as the contract were awarded before the necessary calculations had to be made. The choice of July 1 as a cutoff date is thus unnecessary even by these standards. But the statute requires a more liberal approach.

1972-1973, and will apparently be required again for the fiscal year 1973-1974, regardless of the outcome of this case.

A second question arises as to the proper method of calculating amounts due under § 16D. The statute provides for payment of "an amount equal to fifteen per cent of the amount of school aid determined to be due such town under the provisions of chapter seventy and subsection (b) of section eighteen A of chapter fifty-eight." The amount of aid theoretically due under c. 70 is derived by multiplying a town's "reimbursable expenditures" for the last preceding State fiscal year by the "school aid percentage." G. L. c. 70, § 4. Such a sum is to be paid out of a fund provided for in G. L. c. 58, § 18A, which is to consist of $239,600,000, increased by the same percentage that sales tax revenues have increased since 1969. If this fund is insufficient to cover the total amount of local aid for the programs mentioned, G. L. c. 58, § 18A, as amended by St. 1969, c. 546, § 7, then that section provides in subsection (b) (5) that each program including c. 70 is reduced in the same proportion that the amount in the fund bears to the total amount of local aid which would be paid if the fund were adequate. Such proportional reductions were found necessary in both 1972 and 1973. The towns argue that the fifteen per cent figure of § 16D is to be applied to the amount of aid calculated under c. 70, without regard to this reduction. The defendants argue that it must be applied to the reduced amount which is actually paid. We think this matter is easily resolved by reference to the statute. The amount to which the fifteen per cent is to be applied is to be calculated with reference to *both* c. 70 and c. 58, § 18A (b). Thus the proportional reduction is expressly provided for and must be performed before calculating the amount to be paid under § 16D.

A declaration is to issue that the plaintiff towns are entitled to State aid pursuant to G. L. c. 71, § 16D, for the calendar year 1972 and the transitional fiscal year 1973-1974, based upon the actual amounts disbursed or to be disbursed in those years pursuant to c. 70. The case is remanded to the Superior Court for the calculation of the

amounts to be paid out of the funds withheld pursuant to stipulation in this case.

*So ordered.*